# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 24-61881-CIV-DAMIAN/Valle

**MAHMOUD CHARR**,

     Plaintiff,

v.

**DON KING and DON KING PRODUCTIONS, INC.**,

     Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS
## COMPLAINT AND MOTION TO STRIKE [ECF NO. 17]

THIS CAUSE is before the Court on Defendants, Don King ("King") and Don King Productions, Inc.'s ("DKP") (collectively, "Defendants"), Motion to Dismiss Complaint and incorporated Motion to Strike [ECF No. 17 ("Motion")], filed November 22, 2024. Plaintiff, Mahmoud Charr ("Plaintiff" or "Charr"), filed a Response [ECF No. 25], and Defendants filed a Reply [ECF No. 28].

THE COURT has reviewed the Motion, the Response, and the Reply, the record, and relevant authorities and is otherwise fully advised. For the reasons set forth below, the Motion is due to be granted.

## I.    BACKGROUND

### A. *Factual Allegations*

The Court accepts as true the following allegations in the Complaint [ECF No. 1] for purposes of considering the Motion to Dismiss.[1]

---

[1] At this stage, the Court accepts the well-pled allegations in the Complaint as true and construes them in the light most favorable to Plaintiff. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

<u>The Parties.</u>

Mahmoud Charr, a German citizen and resident of Dubai, is a heavyweight boxer with a distinguished professional record of 34 wins, four losses, and one draw. *See* Complaint ¶¶ 1, 10. In November 2017, Charr was crowned the World Boxing Association ("WBA") Regular Heavyweight Champion. *Id.* ¶ 10.

Don King is a United States citizen and Florida resident. *Id.* ¶ 2. King is a prominent promoter and among the most controversial figures in professional boxing. *Id.* ¶ 15. King owns and operates the boxing promotions company DKP, which is a foreign corporation with its principal address in Deerfield Beach, Florida. *Id.* ¶¶ 2, 12.

<u>The Charr/Bryan Bout.</u>

On March 6, 2019, the WBA issued a resolution requiring Charr to defend his title against King's fighter, Trevor Bryan ("Bryan"), whom the WBA inexplicably promoted to the title of "Interim Champion" prior to arranging the bout. *Id.* ¶ 16. The WBA ordered a purse bid for the fight (the "Charr/Bryan Bout") that was scheduled for May 28, 2019 (the "May 28, 2019 purse bid"). *Id.* ¶ 18. The purse bid process requires promoters to submit a bid for the rights to a title fight. *Id.* ¶ 19. When a purse bid is ordered, the reigning champion typically receives 75% of the total bid for the fight with the remaining 25% paid to the challenger. *Id.* The WBA uses a standard form "Purse Bid Bout Contract" ("Bout Contract"), which fighters and their respective camps are required to sign and return to the WBA ahead of a title fight whenever a purse bid is ordered. *Id.* ¶ 20; Ex. C [ECF No. 20-1 at 6–9].

<u>The Promoter Agreement.</u>

Prior to the May 28, 2019 purse bid, DKP approached Charr to enter a promoter agreement, which was signed by King (on behalf of DKP) on May 26, 2019 (the "Promoter Agreement"). *Id.* ¶ 21. An unreadable copy of the signature page of the Promoter Agreement is attached to the Complaint. *See* Ex. A [ECF No. 20-1 at 2]. A separate promotions company, Epic Promotions, Inc. ("Epic"), which is not a party to this action, also signed the Promoter Agreement. *Id.* Under the Promoter Agreement, DKP and Epic agreed to serve as Charr's co-promoters "for a minimum period of two years or as long as Charr [was] world champion of the WBA, WBC, IBF and/or WBO . . . plus two years after [Charr] cease[d] to be a world champion." *Id.* ¶ 23. DKP and Epic also promised "to offer Charr a minimum of two bouts during each year" for the term of the contract. *Id.* The Promoter Agreement provides that, "while Charr [was] world champion, his purse for his bouts [would] be . . . not less than $750,000.00, unless otherwise agreed upon by the parties." *Id.* ¶ 24. The Agreement also states that DKP would bid "at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout." *Id.* The terms of the Promoter Agreement further provide that if DKP won the purse bid, Charr would "accept his purse share as determined by the WBA; provided, however that if such purse bid share [was] less than $1,000,000.00 . . . then [DKP would] supplement Charr's purse to One Million Dollars." *Id.* ¶ 25.

<u>Alleged Breach of The Promoter Agreement.</u>

Charr alleges that within days of entering the Promoter Agreement, King and DKP caused the WBA to cancel the May 28, 2019 purse bid by failing to submit on Charr's behalf an executed Bout Contract to the WBA. *Id.* ¶ 30. Prior to the cancellation, DKP never

provided Charr with a Bout Contract to sign. *Id.* Instead, King informed Epic that a purse bid was not necessary and that DKP would promote the fight by the end of 2019. *Id.* ¶ 26. While DKP has since claimed that there was an agreement with Charr to cancel the bid, Charr alleges this is false and that he did not consent to the cancellation. *Id.* Charr further alleges, upon information and belief, that King and DKP misled Epic by stating that they would promote a Charr bout to take place prior to the end of 2019 without the necessity of a purse bid. *Id.* ¶ 28. Charr alleges that DKP and King did not promote a Charr bout. *Id.* ¶ 29.

Charr alleges that by not providing him with a Bout Contract to sign, and in turn, causing the WBA to cancel the May 28, 2019 purse bid and postpone the Charr/Bryan Bout, DKP allegedly breached the Promoter Agreement by failing to "bid at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout." *Id.* ¶ 30. Charr alleges DKP committed a further breach of the Promoter Agreement by failing to "offer Charr a minimum of two bouts during each year of the term" of the Promoter Agreement. *Id.* ¶ 31. As a result of DKP's alleged breaches, Charr sustained damages, including, but not limited to, $1 million in lost income that DKP was obligated to pay Charr for his purse in the Charr/Bryan Bout. *Id.* ¶ 32.

<u>The January 29, 2021 Charr/Bryan Bout And Fallout.</u>

In March 2020, the WBA ultimately called for another purse bid to take place on January 20, 2021, at which DKP bid over $2,000,000. *Id.* ¶ 33. Charr alleges that at the amount bid, the bout would have caused King and DKP to lose a large sum of money and, therefore, King and DKP concocted a scheme to avoid their obligations. *Id.* ¶ 34.

Charr alleges that in addition to refusing to submit the signed DKP Bout Contract pursuant to WBA rules, DKP and King took further steps to prevent Charr from defending

his title as the reigning WBA Regular Heavyweight Champion and to avoid paying Charr the sums he was owed for the bout. *Id.* ¶ 35. For example, the standard WBA Bout Contract required DKP and King to assist Charr, who resided in Germany at the time, with securing the appropriate Visa necessary to travel to the United States to participate in the Charr/Bryan Bout scheduled for January 29, 2021. *Id.* ¶ 36.[2] As alleged in the Complaint, King assured Charr, who is Muslim, that King would use his alleged connections to the Trump Administration – which had signed the so-called "Muslim Ban" into effect that made it difficult for someone of Charr's background to enter the United States – to expedite the process of obtaining the requisite Visa for Charr. *Id.* ¶ 37. Charr alleges this never occurred. *Id.* After King failed to exercise his purported influence, Charr began the process of securing his P-1 Visa through the United States consulate in Frankfurt, Germany, once the "Muslim Ban" was lifted after President Biden took office. *Id.* ¶ 39. To obtain his P-1 Visa, Charr was required to produce to the consulate a copy of the parties' executed DKP Bout Contract as proof of his reason for traveling to the United States. *Id.*

On January 26, 2021, Charr's counsel contacted counsel for DKP and King to request a copy of the signed DKP Bout Contract advising that Charr could not obtain his P-1 Visa without a copy of the signed DKP Bout Contract, and thus, could not participate in the Charr/Bryan Bout unless and until DKP and King produced the contract. *Id.* ¶ 40; *see* Ex. D [ECF No. 20-1 at 16–18 (Email communications between Charr's attorney and DKP's attorney)]. Despite this request, which Charr's counsel explained was made under significant

---

[2] The Complaint includes conflicting allegations as to whether the Charr/Bryan Bout was scheduled for January 20, 2021 or January 29, 2021. *See* Compl. ¶¶ 33, 36.

time restraints given the impending fight date, DKP and King allegedly refused to produce a copy of the signed DKP Bout Contract to Charr. *Id.* ¶ 41. According to Charr, this was part of DKP and King's plan to prevent Charr from traveling to the United States to participate in the Charr/Bryan Bout and receiving the $1.5 million purse he was owed by DKP and King for the fight. *Id.*

Charr Is Stripped of The Champion Title.

After Charr was unable to participate in the Charr/Bryan Bout due to not obtaining his P-1 Visa, the WBA canceled the Charr/Bryan Bout. *Id.* ¶ 42. Charr alleges that, thereafter, DKP and King again exerted undue influence over the WBA by convincing the WBA to strip Charr of his title as a result of Charr not attending the Charr/Bryan Bout. *Id.* Charr claims that DKP and King then arranged a new fight for the WBA Regular Heavyweight Champion title between DKP and King's own fighter, Bryan, and a far less capable boxer, Bermane Stiverne, who was 10 years Bryan's senior and had been knocked out by his two previous opponents. *Id.* ¶ 43.

Charr further alleges that, while working in concert with DKP and King, the WBA artificially ranked Stiverne to make it appear as though Stiverne was qualified to face Bryan in the title bout. *Id.* ¶ 44. Charr claims that DKP and King's obvious intention was to ensure Bryan, who was at the time the Interim Champion and challenger for the WBA Regular Heavyweight Champion title, faced an easy opponent so Bryan could be crowned the new champion and, in return, DKP and King could maximize their profits off the title fight as Bryan's promoters. *Id.* ¶ 45.

On January 30, 2021, Bryan and Stiverne fought for the WBA Regular Heavyweight Champion title in Hollywood, Florida. *Id.* ¶ 46. As expected, Bryan soundly defeated the 42-year-old Stiverne to become the new WBA Regular Heavyweight Champion. *Id.* ¶ 46.

<u>The Rescheduled Charr/Bryan Bout.</u>

Thereafter, on December 9, 2021, the WBA held another purse bid for a Charr/Bryan Bout in Miami, Florida. *Id.* ¶ 47. Charr alleges that, once again, King and DKP, working in conjunction with the WBA, intentionally added terms to the standard purse bid contract that made it impossible for Charr to comply. *Id.* ¶ 48. For example, deviating from the standard form WBA Bout Contract, DKP's Bout Contract required Charr to obtain his own P-1 Visa by or before December 29, 2021 or Charr would be stripped of the opportunity to fight Bryan. *Id.* Charr claims this requirement was impossible given there were no appointments available at the United States Consulate in Germany at the time because of the holiday season. *Id.* ¶ 49.

Charr also alleges that the new terms of the purse bid contract required DKP to submit a dually executed bout contract to the WBA by December 29, 2021. *Id.* ¶ 50. As noted above, foreign fighters in Charr's position, who seek to travel to the United States to participate in a bout, are required to provide a copy of the signed bout contract as part of their application for a P-1 Visa. *Id.* Despite Charr's counsel notifying DKP that Charr needed a copy of the signed bout contract in order to obtain his P-1 Visa and making multiple requests that DKP forward a copy of the contract, DKP allegedly refused to do so. *Id.* ¶ 51.

As further alleged in the Complaint, documents produced by the WBA indicate that King deposited $269,000 with the WBA as a deposit on the Charr/Bryan Bout, however, the

actual sanction fees were $72,000. *Id.* ¶ 53. Charr alleges that King and DKP overpaid the WBA some $197,006 in funds over the arguably legitimate sanction fees. *Id.* Charr further alleges that accountings provided by the WBA in discovery reflect that King and DKP allegedly overpaid the WBA, and the WBA retained approximately $536,500. *Id.* ¶ 52.

Notably, although the rescheduled Charr/Bryan Bout never took place, as a result of a settlement with the WBA, Charr's title as the WBA Regular Heavyweight Champion has since been restored. *Id.* ¶ 55.

### B. *Procedural History*

Before turning to the procedural history of the instant action, a summary of the procedural history of two previously filed actions in this District involving the same parties and many of the same allegations bears mention.

1. *Charr v. King, et al.*, Case No. 21-cv-61654-WPD (the "First Action").

On August 10, 2021, Charr, filed a Complaint against King, DKP, and Epic, alleging breach of the Promoter Agreement against DKP and Epic (Count I), breach of the purse bid agreement against DKP (Count II), tortious interference with business relationship against King and DKP (Count III), and civil conspiracy against King, DKP, and Does 1 – 5 (Count IV). *See generally* ECF No. 1. District Judge William P. Dimitrouleas presided over the First Action. [ECF No. 2].

Defendants King and DKP filed a Motion to Dismiss the Complaint and Motion to Strike. [ECF No. 12]. On November 30, 2021, Judge Dimitrouleas entered an Order dismissing Counts II and IV for failure to state a claim pursuant to Rule 12(b)(6), striking the claims for attorney's fees, and denying the remainder of Defendants' Motion to Dismiss.

[ECF No. 24]. On December 8, 2021, Epic filed an answer to the Complaint, and on December 13, 2021, King and DKP filed an answer to the Complaint. [ECF Nos. 29, 32].

On August 3, 2022, Judge Dimitrouleas granted Charr's Motion to Amend Complaint, which sought to include the WBA and Gilberto Mendoza, Jr. ("Mendoza") as parties in the First Action and to assert additional claims against King, DKP, Epic, the WBA, and Mendoza based on evidence obtained in discovery. [ECF Nos. 43, 44]. Charr filed his Amended Complaint, the operative pleading, on August 8, 2022. [ECF No. 45]. The Amended Complaint alleged the following causes of action: Count I -- Violations of 15 U.S.C. § 6308 (Muhammad Ali Act) against all Defendants; Count II -- Violation of 18 U.S.C. § 1962 (RICO) against King, DKP, Mendoza, and WBA; Count III -- Breach of Contract (Promoter Agreement) against DKP and Epic; Count IV -- Breach of Contract (Purse Bid Agreement) against DKP; Count V -- Tortious Interference with Business Relationship against King and DKP; Count VI -- Breach of Contract against WBA; and Count VII -- Civil Conspiracy against King, DKP, Mendoza, and WBA. *See id.*

On September 6, 2022, the Defendants in the First Action filed a Motion to Dismiss and Motion to Strike, seeking to dismiss Counts I, II, IV, and VII of the Amended Complaint for failure to state a claim upon which relief can be granted and to strike the requests for attorneys' fees in Counts III and IV. [ECF No. 52]. On October 31, 2022, Judge Dimitrouleas entered an Order dismissing Count II without prejudice and Count IV with prejudice, striking

the claims for attorney's fees in Counts III and V, [3] and denying the remainder of the Defendants' Motion to Dismiss. [ECF No. 63].

Approximately one year later, on September 5, 2023, Charr and Defendants Mendoza and the WBA filed a Joint Notice of Settlement. [ECF No. 120]. After Charr and the remaining Defendants, King, DKP, and Epic, litigated several discovery disputes, including a motion to compel the in-person deposition of Charr in Miami, Florida, on November 16, 2023, the parties in the First Action filed a Stipulation of Voluntary Dismissal Without Prejudice pursuant to Rule 41(a)(1)(A)(ii). [ECF Nos. 132, 142, 145].

2.  *Charr v. King, et al.*, Case No. 24-cv-60896-WPB (the "Second Action").

Six months after the First Action was voluntarily dismissed, on May 27, 2024, Charr, who was then represented by other counsel, filed a Complaint (which included almost identical allegations as the Amended Complaint in the First Action) asserting violations of the Muhammad Ali Act, 15 U.S.C. § 6308, against King and DKP (Count I) and breach of the Promoter Agreement against DKP and Epic (Count II). [ECF No. 1]. The Clerk assigned the Second Action to Judge Dimitrouleas as a related case to the First Action. [ECF No. 2].

The Second Action was more short-lived than the First Action. On August 27, 2024, Judge Dimitrouleas *sua sponte* entered an Order dismissing the case without prejudice for lack of prosecution, failure to timely serve Defendants, and failure to follow the Court's requirements for counsel's *pro hac vice* appearance. [ECF No. 6].

---

[3] The Order indicates that, in the response, Plaintiff did not address this argument and conceded that the allegations did not support a claim for attorneys' fees.

3.  The Instant Action.

Six weeks after the court *sua sponte* dismissed the Second Action, on October 9, 2024, Charr, represented by the same attorneys as in the Second Action, filed a Complaint against King and DKP in the instant action. [ECF No. 1].[4] The Complaint in this case asserts the following causes of action: Count I – Violations of the Muhammad Ali Act (15 U.S.C. § 6308) against both Defendants; Count II – Breach of Contract (Promoter Agreement) against DKP; and Count III – Interference With Prospective Economic Advantage against both Defendants. [ECF No. 1]. The allegations in Counts I and II of the Complaint in this action are nearly identical, word for word, to the allegations in Counts I and III in the Amended Complaint in the First Action, except for the removal of WBA and Epic from some allegations, as Charr claims he reached a settlement with those parties.

---

[4] The undersigned notes that although the Civil Cover Sheet attached to the Complaint lists the two prior related actions and the District Judge who presided over those actions [ECF No. 1-2], Charr's counsel did not file a Notice of Pending, Refiled, Related or Similar Actions, as required by Southern District of Florida Local Rule 3.8. Therefore, the Clerk assigned the instant action to the undersigned rather than to Judge Dimitrouleas, who presided over the prior related actions. [ECF No. 2]. The requirement to complete a civil cover sheet with every complaint is "solely for administrative purposes" (S.D. Fla. Local Rule 3.3), and notice of the existence of any refiled or similar actions is not made through the filing of a civil cover sheet. Instead, pursuant to Rule 3.8 of the Local Rules of the United States District Court for the Southern District of Florida and section 2.15.00 of the Court's Internal Operating Procedures, all counsel of record are under a continuing obligation "to bring promptly to the attention of the Court and opposing counsel the existence of other actions or proceedings" by "filing with the Court and serving a 'Notice of Pending, Refiled, Related or Similar Actions,' containing a list and description thereof sufficient for identification." S.D. Fla. Local R. 3.8. No such notice was filed in this action. The undersigned was made aware of the prior related actions through a footnote in Defendants' Motion to Dismiss. Charr's counsel's failure to timely notify this Court of the existence of the prior related actions, particularly the First Action during which the same parties litigated the same claims for over two years, is tantamount to sanctionable conduct.

On November 22, 2024, Defendants filed the Motion now before the Court, seeking to dismiss the entire Complaint as a shotgun pleading and for failure to state a claim upon which relief can be granted and to strike the requests for attorneys' fees in Counts II and III. [ECF No. 23]. The Motion to Dismiss is fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint that does not satisfy the applicable pleading requirements for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). The Court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, pleadings that "are no more than conclusions[ ] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Dismissal pursuant to a Rule 12(b)(6) motion is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (internal quotation marks omitted) (quoting *Hishon*, 467 U.S. at 73). Generally, a complaint must satisfy Federal Rule of Civil Procedure 8(a)(2), which requires that a pleading contain a "short and plain statement of the claim" showing the

pleader is entitled to relief. The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

## III.   ANALYSIS

In the Motion now before this Court, Defendants King and DKP argue the entire Complaint should be dismissed as an improper shotgun pleading. Defendants further argue that the Complaint should be dismissed for failure to state a claim upon which relief can be granted and that the requests for attorneys' fees in Counts II and III of the Complaint should be stricken. This Court addresses each of these grounds below.

### A. *Shotgun Pleading.*

Defendants argue that the Complaint is a shotgun pleading because each count incorporates all of the preceding allegations of the entire Complaint. Mot. at 5 (citing Compl. ¶ 57 ("Plaintiff, Charr, adopts and incorporates into Count I the general allegations heretofore set forth and further alleges:"); ¶ 67 ("Plaintiff, Charr, adopts and incorporates into Count II the allegations in Paragraphs asserted heretofore and further alleges:"); ¶ 75 ("The allegations of the preceding paragraphs are repeated as though set forth herein.")). In his Response, Charr admits the "background material is incorporated into each count," but he, nonetheless, maintains that the Complaint is not a shotgun pleading because the allegations are not vague and "[i]t is quite easy for the [K]ing Defendants to answer these allegations." Resp. at 3–6.

As noted above, Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim" showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Thereunder, "a complaint must contain sufficient factual matter,

13

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted).

Complaints that violate Rule 8(a)(2) "are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (*i.e.*, all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). A shotgun pleading makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (citation omitted). Therefore, "shotgun pleadings are routinely condemned by the Eleventh Circuit." *Real Estate Mortg. Network, Inc. v. Cadrecha*, No. 11-cv-474, 2011 WL 2881928, at *2 (M.D. Fla. July 19, 2011) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)).

The Complaint here is a quintessential shotgun pleading. Charr's claim for breach of contract in Count II incorporates all preceding allegations, including those asserted as grounds for violation of the Muhammad Ali Act in Count I. Compl. ¶ 67; *see Weiland*, 792 F.3d at 1321 ("The most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a

combination of the entire complaint.")). By incorporating each preceding paragraph, the Complaint makes it difficult to ascertain what factual allegations and legal conclusions correspond to the second and third causes of action in the Complaint. *Id.*; *see also Beckwith v. Bellsouth Telecomms. Inc.*, 146 F. App'x 368, 372 (11th Cir. 2005). Plaintiff ignores overwhelming authority on this issue which dictates that this is precisely the kind of shotgun pleading the Eleventh Circuit has repeatedly condemned, as "[t]he result is that [the second and third] count[s] [are] replete with factual allegations [and legal conclusions] that could not possibly be material to th[ose] specific count[s]." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

The Motion to Dismiss is therefore due to be granted and the Complaint is due to be dismissed as an impermissible shotgun pleading pursuant to well-established binding precedent in the Eleventh Circuit. Because dismissal on these bases is without prejudice, for the sake of completeness, this Court also addresses the parties' arguments with respect to the sufficiency of Charr's claims.

### B.  *Count I – Violations of The Muhammad Ali Act.*

In Count I, Charr asserts a claim against both Defendants under the Muhammad Ali Boxing Reform Act, 15 U.S.C. § 6301, *et seq.* (the "Ali Act"). *See* Compl. ¶¶ 58–66. Charr brings a private right of action as a boxer for violations of the Ali Act, which is permitted by 15 U.S.C. § 6309(d).[5] Specifically, Charr alleges that King and DKP violated 15 U.S.C. §

---

[5] Section 6309(d) of the Ali Act provides: "Any boxer who suffers economic injury as a result of a violation of any provision of this chapter may bring an action in the appropriate Federal or State court and recover the damages suffered, court costs, and reasonable attorneys fees and expenses."

6308(c)(1) by "paying compensation, providing gifts, and/or providing other benefits to officers and employees of the WBA . . . ." Compl. ¶ 63. In support of this claim, Charr alleges that "[d]ocuments supplied by the WBA appear to show that King/DKP overpaid to the WBA and the WBA retained" $536,000. *Id.* ¶ 61. Charr further alleges that Defendants violated 15 U.S.C. § 6307b(b), which provides that "[n]o boxing service provider may require a boxer to grant any future promotional rights as a requirement of competing in a professional boxing match that is a mandatory bout under the rules of a sanctioning organization." According to the allegations in the Complaint, Defendants violated this section of the Ali Act because they "attempted to extort future rights in a mandatory bout situation from Charr by changing the terms of the standard WBA Bout Contract . . ." Compl. ¶ 64.

In the Motion, Defendants argue that the Complaint fails to identify or describe any "documents" or "accountings" that would "appear to show" any wrongdoing committed by Defendants. Mot. at 11. They further argue that the allegations with respect to Defendants' alleged violation of 15 U.S.C. § 6307b(b) are vague and fail to state a plausible violation of the Ali Act because it is unclear how Defendants' alleged changing of the terms of a standard WBA bid contract, by requiring Charr to obtain his own P-1 Visa, amounts to a violation of that section of the Ali Act. In response, Charr argues that he has stated a claim for violation of the Ali Act and that he is not required to identify or attach every document referenced in the Complaint. Resp. at 10–11.

    1.   <u>15 U.S.C. § 6308(c).</u>

Pursuant to 15 U.S.C. § 6308(c), "no officer or employee of a sanctioning organization may receive compensation, gift, or benefit, directly or indirectly, from a promoter, boxer, or

manager" except as part of a published sanctioning fee charge that is reported to a commission.

In Count I, Charr alleges that he is a "Boxer," as defined in 15 U.S.C. § 6301(1); that King and DKP are "Promoters," as defined in 15 U.S.C. § 6301(9); and that the WBA is a "Sanctioning Organization," as defined in 15 U.S.C. § 6301(14). *See* Compl. ¶¶ 57–59.[6] Charr alleges that King and DKP "overpaid to the WBA and the WBA retained" $536,500. *Id.* ¶ 61; *see also id.* ¶ 53 ("Documents produced by the WBA appear to show that King had deposited . . . $269,000 with the WBA as a deposit on the Charr – Bryan bout. The actual sanction fees were . . . $72,000."). He further alleges that King and DKP violated 15 U.S.C. § 6308(c) "by paying compensation, providing gifts, and/or providing other benefits to officers and employees of the WBA . . ." *Id.* ¶ 63.

These allegations sufficiently allege a violation of 15 U.S.C. § 6308(c).[7]

2.  15 U.S.C. § 6307b(b).

Under 15 U.S.C. § 6307b(b), "[n]o boxing service provider may require a boxer to grant any future promotional rights as a requirement of competing in a professional boxing match that is a mandatory bout under the rules of a sanctioning organization."

In Count I, Charr alleges that King and DKP violated this section of the Ali Act because they "attempted to extort future rights in a mandatory bout situation from Charr by

---

[6] The first four paragraphs under Count I are misnumbered.

[7] The Court notes that these allegations are similar to the allegations made in Count I of the Amended Complaint against all of the Defendants, including King and DKP, in the First Action before Judge Dimitrouleas, who found such allegations sufficiently allege a violation of 15 U.S.C. § 6308(c). *See* Order on Defendants' Motion to Dismiss Amended Complaint and Motion to Strike [ECF No. 63 at 4], First Action.

changing the terms of the standard WBA Bout Contract." Compl. ¶ 64. Charr then specifically

cites Paragraph XI, titled "Future Bouts," of the DKP Bout Agreement, a copy of which is

attached to the Complaint. Compl. ¶ 64, Ex. E [ECF No. 20-1 at 20–25]. Notably, subsection

(d) of Paragraph XI of the DKP Bout Agreement provides:

> Notwithstanding the foregoing, in the event that (i) Opponent, in accordance
> with Title 15 United States Code ("USC") §6307b(a)(1)(A)(ii), came under
> contract to Promoter pursuant to a coercive provision described in Title 15 USC
> §6307b(a)(1)(B), (ii) this Paragraph 11 would not be enforceable against Fighter
> pursuant to Title 15 USC §6307b(a)(3) or (iii) the Bout is a "mandatory bout"
> within the meaning of Title 15 USC § 6307b(b), the parties understand and
> agree that this Paragraph shall be null and void.

[ECF No. 20-1 at 23]. In the General Allegations section of the Complaint, Charr alleges that

King and DKP "intentionally added terms to the standard purse bid contract that made it

impossible for Charr to comply," including terms that "required Charr to obtain his own P-1

Visa by or before December 29, 2021," and terms that "required DKP to submit a dually

executed bout contract to the WBA by December 29, 2021." Compl. ¶¶ 48, 50.

The undersigned finds that the allegations in Count I pertaining to violation of 15

U.S.C. §6307b(b) are not specific enough to put Defendants on notice of the claims against

them. The allegations fail to identify which terms allegedly added to the standard purse bid

contract required Charr "to grant any future promotional rights" as a requirement of

competing in a professional boxing match that is a mandatory bout. For example, it is not

clear whether Charr is alleging that the terms under Paragraph XI in the DKP Bout Contract

constitute a violation of 15 U.S.C. § 6307b(b). Put simply, the allegations in the Complaint

are not specific as to how Defendants allegedly violated Section 6307b(b) of the Ali Act. And

Charr's allegation that Defendants included terms in the Bout Contract requiring Charr to

obtain his own P-1 Visa prior to the bout alone does not put Defendants on notice of how this alleged change in the terms of the standard bout contract required Charr to "grant any future promotional rights" as a requirement of "competing in a professional boxing match that is a mandatory bout," as required for a violation of Section 6307b(b).

Therefore, to the extent Defendants' Motion seeks dismissal of Count I for failure to state a claim, the Motion is due to be denied as to Defendants' alleged violation of Section 6308(c) but granted as to Defendants' alleged violation of Section 6307b(b).

### C. *Count II – Breach of Contract (Promoter Agreement).*

In Count II, Charr asserts a breach of contract claim against DKP based on the Promoter Agreement. Compl. ¶¶ 67–74. Defendants argue that Count II should be dismissed for three reasons: (1) the claim is at least partially barred by the statute of limitations, (2) the claim fails to plead all of the required elements for a breach of contract cause of action, and (3) Charr has failed to join Epic as a necessary and indispensable party. *See* Mot. at 7–10. The Court addresses each ground for dismissal of Count II, in turn.

#### 1. Statute of Limitations.

Defendants first argue that the breach of contract claim is at least partially barred by the applicable five-year statute of limitations.[8]

As alleged in the Complaint, Charr, DKP, and Epic entered into a contract on May 26, 2019. Compl. ¶ 21. Charr alleges that DKP breached the contract by: (1) "failing to provide Charr with a bout contract for the Charr/Bryan Bout and, in turn, failing to submit a signed

---

[8] The parties agree that Florida law governs the breach of contract claim and that the statute of limitations on a breach of contract claim in Florida is five years. *See* Fla. Stat. § 95.11(2)(b).

bout contract on Charr's behalf to the WBA for that fight, which caused the WBA to cancel the May 28, 2019 Charr/Bryan Bout purse bid . . ."; (2) "failing to 'bid at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout'"; and (3) "failing to 'offer Charr a minimum of two bouts during each year' the Promoter Agreement was in effect." Compl. ¶¶ 71–73.

Defendants argue that the first two alleged contractual breaches are barred by the five-year statute of limitations. As to the first alleged breach, Defendants claim that any alleged misconduct by DKP that ultimately led to the cancellation of the May 28, 2019 fight necessarily occurred by the date of the fight, such that the statute of limitations ran on May 28, 2024. Charr did not file his Complaint until October 9, 2024, four months after the statute of limitations expired. Similarly, with respect to the second alleged breach, that DKP failed to bid at least $1,000,000 for the May 28, 2019 Charr/Bryan fight, that breach also necessarily occurred by the date of that fight, such that the statute ran on that claim on May 28, 2024, as well.

Charr's Response does not meaningfully address Defendants' arguments concerning the above-described breaches. Instead, Charr focuses on different allegations in the Complaint and states "[t]he actual breach did not occur until King failed to provide a Bryan bout 'by the end of 2019' and continued when King failed to offer two bouts per year. The Contract action, filed on October 9, 3024 [sic] is clearly within the 5 year statute of limitations." Resp. at 9. As Defendants point out in the Reply, Defendants do not argue in the Motion that the allegations of "failing to offer [Charr] a minimum of two bouts during each year of the Contract, and

scheduling further promised fights" are barred by the statute of limitations. Reply at 8. In other words, Charr misses Defendants' point.

This Court agrees with Defendants that on its face, Count II is partially barred by the applicable statute of limitations. Because the allegations in Count II concerning DKP's alleged failure to submit a bout contract to the WBA for the May 28, 2019 Charr/Bryan Bout and alleged failure to bid $1,000,000 at the May 28, 2019 Charr/Bryan purse bid are barred by the statute of limitations, the Motion is due to be granted in part as to these bases for the breach of contract claim in Count II.

2. <u>Sufficiency of The Allegations.</u>

Defendants next argue that Count II does not plead all required elements of a valid breach of contract claim. "To prevail on a breach of contract claim under Florida law, a plaintiff must show '(1) the existence of a contract; (2) a breach of the contract; and (3) causation of damages as a result of the breach.'" *Gent Row, LLC v. Truist Fin. Corp.*, No. 24-10387, 2025 WL 1721485, at *3 (11th Cir. June 20, 2025) (quoting *Cole v. Plantation Palms Homeowners Ass'n, Inc.*, 371 So. 3d 413, 415 n.2 (Fla. 2d DCA 2023)). Defendants' attempt to add a fourth element (*i.e.*, "Plaintiff's performance of her obligations under the contract or a legal excuse for its nonperformance") is unavailing.[9]

---

[9] Contrary to Defendants' statement otherwise, the single case from this District cited by Defendants on this point is not binding on this Court. *See Camreta v. Greene*, 563 U.S. 692, 708 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (citation omitted)); *see also Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects."). This Court is only bound by decisions of the Eleventh Circuit Court of Appeals and the United States Supreme Court. *See McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("The general

Accepting the allegations in the Complaint as true, Charr alleges: (1) "[o]n May 26, 2019, Charr entered a legally valid and enforceable Promoter Agreement with DKP," which provided that "DKP would serve as Charr's promoter[ ] 'for a minimum period of two years' and 'offer Charr a minimum of two bouts during each year' the agreement was in effect"; (2) DKP breached the contract by "failing to 'offer Charr a minimum of two bouts during each year' the Promoter Agreement was in effect" (the only alleged breach that is not barred by the statute of limitations, as discussed *supra*), and (3) "[a]s a result of DKP's breach[], Charr sustained contract damages." Compl. ¶¶ 68–69, 73–74.

These allegations are sufficient to state a breach of contract claim against DKP.

3. <u>Failure to Join Necessary and Indispensable Party.</u>

Defendants also argue that Count II should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) based on Charr's failure to join Epic, one of the three signatories to the Promoter Agreement and, therefore, an indispensable party under Rule 19. In Response, Charr states that he has reached a settlement with Epic, which has agreed to cooperate in this lawsuit. Charr does not otherwise address Defendants' arguments with respect to the failure to join Epic as an indispensable party and, as such, Charr has essentially conceded this point. *See GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017) (Altonaga, J.) ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned.").

---

rule is that a district judge's decision neither binds another district judge nor binds him [or her], although a judge ought to give great weight to his [or her] own prior decisions. A circuit court's decision binds the district courts sitting within its jurisdiction while a decision by the Supreme Court binds all circuit and district courts." (internal citation omitted)).

The two-step approach courts in the Eleventh Circuit employ in order to determine whether a party is indispensable is as follows:

> First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue.

*Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003) (quoting *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982)). A contracting party is the paradigm of an "indispensable party" under the federal rule governing joinder of necessary and indispensable parties. Fed. R. Civ. P. 19(b).

Here, a review of the allegations and claims in the Complaint demonstrate that Epic is a necessary and indispensable party pursuant to Rule 19(a)(1). The Complaint specifically alleges that both DKP and Epic are signatories to the Promoter Agreement, the contract at issue in Count II. Compl. ¶ 21. The Complaint further alleges that, under the Promoter Agreement, "DKP and Epic agreed to serve as Charr's co-promoters for a minimum period of two years" and that "DKP and Epic also promised 'to offer Charr a minimum of two bouts during each year' for the term of the contract." Compl. ¶ 23. Further, in Count II, Charr alleges that as a result of "DKP's breaches, Charr sustained contract damages, including . . . $1 million in lost income that DKP *and Epic were* obligated to pay Charr as his purse for the original Charr/Bryan Bout." Compl. ¶ 74 (emphasis added).

These allegations, which are taken as true for purposes of considering the Motion to Dismiss, indicate that, in Epic's absence, the Court cannot accord complete relief among the existing parties. *See* Fed. R. Civ. P. 19(a)(1)(A). The fact that DKP and Epic are both

signatories to the Promoter Agreement may raise issues concerning joint and several liability. The fact that Charr allegedly reached a settlement with Epic is irrelevant to the analysis required under Rule 19. And, as noted by Defendants in their Reply, Charr's references to a purported settlement with Epic is outside the four corners of the Complaint and improper for this Court to consider at the motion to dismiss stage.[10] *See Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (stating that a judge generally may not consider materials outside of the four corners of a complaint without first converting the motion to dismiss into a motion for summary judgment).

Again, Charr fails to address Defendants' arguments on this issue and fails to offer any authority for why this claim may continue without joinder of Epic. Accordingly, because Epic is a necessary and indispensable party under Rule 19(a), the Motion is due to be granted as to Count II.

### D. Count III – Interference With Prospective Economic Advantage.

In Count III, Charr asserts a claim for "Interference With Prospective Economic Advantage" against King and DKP as follows:

> 76.     By virtue of his position as WBA Heavyweight Champion Plaintiff had a legitimate expectation of economic advantage, to wit a series of lucrative bouts.

> 77.     More specifically in the normal course Plaintiff would have been offered lucrative bouts due to his status as a Champion.

> 78.     Defendant King and DKP were aware of this expectation.

---

[10] Not to mention that Charr appears to be disclosing confidential settlement communications. Courts presented with this situation often strike the settlement communications under Federal Rule of Civil Procedure 12(f). *See, e.g.*, *Askan v. Faro Technologies, Inc.*, No. 6:23-cv-920-PGB-DCI, 2023 WL 7411243 at *4-5 (M.D. Fla. Oct. 6, 2023) (collecting cases).

79.    King and DKP interfered with the legitimate expectation by causing Plaintiff Charr to be stripped of the title.

80.    Charr suffered significant [d]amages thereby in excess of one million dollars.

81.    The actions of King and DKP were malicious and outside the realm of normal or acceptable business practices.

Compl. ¶¶ 76–81.

In the Motion, Defendants argue that Count III should be dismissed because it fails to allege (1) an actual and identifiable business relationship, (2) Defendants' knowledge of such a relationship, and (3) specific damages arising from the alleged interference. Mot. at 6–7. In Response, Charr cites the elements of a claim for tortious interference with business relationship and argues that he had a business relation with the WBA, that Defendants intentionally interfered with that relationship, and that he is not required to plead specific damages at the motion to dismiss stage. Resp. at 7–8.

To state a claim for tortious interference with prospective economic advantage or business relationship, a plaintiff must show: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *GolTV, Inc. v. Fox Sports Latin America, Ltd.*, No. 16-24431, 2018 WL 1393790, at *21 (S.D. Fla. Jan. 26, 2018) (Altonaga, J.) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)); *see also G.M. Brod & Co. Inc., v. U.S. Home Corp.*, 759 F.2d 1526, 1534 (11th Cir. 1985) (explaining elements of tortious interference under Florida law). Florida's Supreme Court has made it clear that an action for tortious interference with a business relationship

25

requires "a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994).

The barebone allegations in Count III of the Complaint fail to adequately allege even the first element of a claim for tortious interference with prospective economic advantage or business relationship. Charr alleges that "[b]y virtue of his position as WBA Heavyweight Champion" he had a "legitimate expectation of economic advantage, to wit a series of lucrative bouts." Compl. ¶ 76. Charr does not allege the existence of a business relationship with an identifiable party or parties. Instead, he simply claims that by virtue of his champion title, he expected to make lots of money in future fights. That may be true, but that is not sufficient to state a claim for tortious interference with prospective economic advantage or business relationship.

In his Response, Charr argues what his Complaint plainly fails to allege – that he had a "business relation with the WBA." Resp. at 7. But Charr cannot amend his Complaint through arguments made in response to the Motion to Dismiss. When the Court is considering a Rule 12(b)(6) motion, it generally cannot consider new factual allegations not contained in the complaint. *See Bruce v. U.S. Bank Nat'l Ass'n*, 770 F. App'x 960, 964 (11th Cir. 2019) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)); *Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1329 (S.D. Fla. 2012) (Seitz, J.) (finding that plaintiffs erred by attempting to supplement factual allegations via a response brief to a motion to dismiss and instead should have placed those allegations in a pleading).

26

Because the allegations in Count III fail to identify an existing business relationship, the Count fails to state a tortious interference claim, and the Motion is due to be granted as to Count III.

### E.  Motion to Strike Claim for Attorney's Fees.

In Count II (breach of contract) and Count III (tortious interference) of the Complaint, Charr seeks an award of attorney's fees. *See* Compl. ¶ 74; *Ad Danum* Clause. Defendants move to strike those claims as unsupported by any contract or statute. In response, Charr cites to 15 U.S.C. § 6309(d), which is not relevant to Counts II or III, as that statute solely pertains to claims under the Ali Act, as alleged in Count I of the Complaint, which Defendants do not challenge insofar as attorneys' fees are concerned. Charr then argues that he is entitled to attorney's fees on the basis of Florida's Wrongful Act Doctrine. In their Reply, Defendants counter that Charr cannot seek fees pursuant to the Wrongful Act Doctrine because he did not specially plead such a request in the Complaint. Reply at 13–14.

In Florida, "the general rule is that attorney's fees incurred while prosecuting or defending a claim are not recoverable in the absence of a statute or contractual agreement authorizing their recovery." *Price v. Tyler*, 890 So. 2d 246, 251 (Fla. 2004) (quoting *Bidon v. Dep't of Prof'l Regulation, Fla. Real Estate Comm'n*, 596 So. 2d 450, 452 (Fla. 1992)). "Under the 'wrongful act doctrine,' however, a plaintiff may recover third-party litigation expenses as special damages when the defendant's wrongful act caused the plaintiff to litigate with a third party." *777 Partners LLC v. Pagnanelli*, No. 20-20172-CIV, 2023 WL 11965485, at *15 (S.D. Fla. July 17, 2023) (Martinez, J.) (citing *State Farm Fire & Cas. Co. v. Pritcher*, 546 So. 2d 1060, 1061 (Fla. 3d DCA 1989)). Specifically, under the doctrine,

27

> where the wrongful act of the defendant has involved the claimant in litigation with others, and has placed the claimant in such relation with others as makes it necessary to incur expenses to protect its interest, such costs and expenses, including reasonable attorney's fees upon appropriate proof, may be recovered as an element of damages.

*Northamerican Van Lines, Inc. v. Roper*, 429 So. 2d 750, 752 (Fla. 1st DCA 1983) (quoting *Baxter's Asphalt, Etc. v. Liberty Cnty.*, 406 So. 2d 461, 467 (Fla. 1st DCA 1981)). A request for recovery of attorney's fees under the wrongful act doctrine is a request for "special damages," which must be specifically pled. *See Robbins v. McGrath*, 955 So. 2d 633, 634 (Fla. 1st DCA 2007) (citing *Winselmann v. Reynolds*, 690 So. 2d 1325, 1328 (Fla. 3d DCA 1997)).

This Court agrees with Defendants that Charr may not seek attorneys' fees under the wrongful act doctrine without specifically pleading such a claim in the Complaint. In any event, this case does not appear to meet the standard for recovery under the wrongful act doctrine because the focus of the litigation, and the basis for any award of fees, arises solely from the contractual and business relationship between Charr and DKP. Stated differently, Charr's request for recovery of attorney's fees in the present action is not due to litigation with a third party. "Courts applying this doctrine have recognized its applicability only when litigation ensuing from a party's wrongful act was against a third party—not directly against the defendant." *MV Senior Mgmt., LLC v. Redus Fla. Housing, LLC*, 319 So. 3d 66, 67 (Fla. 1st DCA 2020) (citing *Grasso v. Grasso*, 131 F. Supp. 3d 1303, 1309 (M.D. Fla. 2015) (applying Florida law); *Robbins v. McGrath*, 955 So. 2d 633, 634 (Fla. 1st DCA 2007); *Schwartz v. Bloch*, 88 So. 3d 1068, 1071 (Fla. 4th DCA 2012)). Here, Charr seeks fees based solely on DKP having allegedly breached their contract, one that has no attorneys' fees provision.

Because no contractual or statutory authorization provides for the recovery of attorneys' fees, and the wrongful act doctrine was not properly pled, Charr is not entitled to recovery of fees under Counts II and III of the Complaint. Accordingly, the claims for attorney's fees in Counts II and III of the Complaint are due to be stricken.

## IV.   CONCLUSION

This Court has undertaken a careful review of Charr's allegations in the Complaint. For the reasons discussed above, the Complaint is a shotgun pleading subject to dismissal on those grounds alone. Even looking past this threshold issue, effectively a technical knockout, the undersigned finds that each Count is subject to dismissal on the additional grounds discussed above.

The undersigned is mindful that this is Charr's third attempt to assert claims for relief against King and DKP based on the same general allegations. Because this and the prior dismissals are not decisions based on the merits of Charr's claims, this Court will dismiss these claims without prejudice. However, if Charr is unable to correct the deficiencies outlined herein, some of which have already been addressed in Charr's previous actions against these Defendants, Charr is admonished that his claims may be subject to dismissal with prejudice. And, in particular, Charr has been instructed multiple times now that there is no basis for an award of attorneys' fees in connection with his non-statutory claims. Therefore, any future attempts to seek attorneys' fees in connection with those claims absent a good faith basis for such a claim despite multiple admonitions concerning their unavailability, will be subject to appropriate sanctions.

Accordingly, based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss **[ECF No. 17]** is **GRANTED**.

2. Plaintiff's Complaint [ECF No. 1] is **DISMISSED** in its entirety as an impermissible shotgun pleading.

3. The Clerk is **INSTRUCTED** to **CLOSE** this case for administrative and statistical purposes. Any deadlines previously set are **TERMINATED**.

4. Any pending motions, including Plaintiff's Motion to Compel [ECF No. 55] and Defendants' Motion to Strike [ECF No. 62], are **DENIED AS MOOT**.

5. If Plaintiff intends to file an amended complaint addressing the deficiencies identified herein and consistent with the rulings in this Order, he shall do so within **fourteen (14) days** of the date of this Order. Defendants shall respond in accordance with this Court's applicable Local Rules and the Federal Rules of Civil Procedure. Failure to file within that time will necessitate the filing of a new case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 26th day of September, 2025.

MELISSA DAMIAN
UNITED STATES DISTRICT JUDGE

cc:   Counsel of record